[No. 41066-4-II.   Division Two.   April 10, 2012.]

MALCOLM GANDER ET AL., *Appellants*, v. ELINA YEAGER ET AL., *Respondents*.

*John Henry Browne* (of *Law Offices of John Henry Browne PS*), for petitioners.

*Karen R. Bertram* (of *Kutscher Hereford Bertram Burkart PLLC*), for respondent Karen Keefe.

¶1 WORSWICK, A.C.J. — In this case involving neighbors locked in a boundary line dispute, Malcolm Gander and

Melanie Keenan[1] appeal a trial court order denying their request for attorney fees. Karen Keefe and Elina Yeager cross appeal an order denying CR 11 sanctions. We affirm.

## FACTS

¶2 Keefe and Yeager own adjoining lots on Bainbridge Island. Keefe and Yeager's northern boundary lines adjoin Gander/Keenan's property. In 2005, Keefe's predecessors-in-interest, Dale and Mary Ridings, joined with Yeager in a suit to quiet title to a small strip of land along their boundary with Gander/Keenan. In March 2006, the Ridingses, Yeager, and Gander/Keenan entered a written agreement settling the dispute.

¶3 One of the provisions of the 2006 settlement agreement addressed the parties' behavior, stating:

2.6 Gander/Keenan shall not disparage the Ridings[es] and Yeagers, or otherwise engage in conduct intended to *harass*, annoy, incite or insult the Ridings[es] or Yeagers. The Ridings[es] and Yeagers shall not disparage Gander/Keenan, or otherwise engage in conduct intended to *harass*, annoy, incite or insult Gander/Keenan.

Clerk's Papers (CP) at 82 (emphasis added). The settlement agreement contains a broad arbitration provision, which states:

5.1 **DISPUTE RESOLUTION.** The parties hereto hereby appoint Mr. Maron, or if he is unavailable, his designee, as arbitrator and agree that he or his designee shall have authority to resolve any and all disputes arising out of or otherwise relating to the enforcement of this [a]greement. The parties agree that Mr. Maron or his designee shall have all powers granted by law to arbitrators, including injunctive relief, to interpret and enforce this [a]greement. Said relief, if necessary, may be enforced by judgment obtained from the Superior Court for [the] State of Washington, County of Kitsap. *Mr. Maron has*

---

[1] We refer to Gander and Keenan collectively as Gander/Keenan, intending no disrespect.

*authority to award [arbitrator] fees to the substantially prevailing party in any such dispute.*

CP at 83 (emphasis added). The settlement agreement does not address attorney fees or costs of litigation.

¶4 Keefe purchased the Ridingses' property in the summer of 2006, approximately four months after the Ridingses, Yeager, and Gander/Keenan entered into the settlement agreement.[2] Keefe claims that Gander/Keenan has engaged in unlawful harassment since the autumn of 2007 by taking photographs of Keefe's home and putting Keefe "and [her] propert[y] under [surveillance using] the prextext of watering an easement area." CP at 55-56. Keefe also claims that Gander/Keenan harassed her by operating "an unsightly and barren goat enclosure" within 30 feet of Keefe's front door, "allowing [the] goats to bleat and cry for extended periods before feeding them," putting goat waste along or very near the property line so the waste would migrate to Keefe's property, and operating a chainsaw for extended lengths of time near Keefe's home for no apparent purpose. CP at 56.

¶5 In April 2008, in response to Gander/Keenan's alleged harassment, Keefe sent a letter to Maron, the arbitrator, to initiate arbitration. The relief Keefe requested was "specific enforcement of [Keefe's] easement rights and [her] right to maintain the vegetation south of the fence without Gander/Keenan's *interference or harassment.*" CP at 78 (emphasis added). Keefe's letter initiating arbitration, however, did not specifically address section 2.6 of the settlement agreement. Gander/Keenan responded by letter that the issue in dispute was beyond Maron's purview and that Keefe did not have "a status or rights under the Settlement Agreement." CP at 99-100.

¶6 Maron, however, determined in June 2008 that the settlement agreement encompassed this dispute and that

---

[2] Although both Keefe and Yeager are named parties, only Keefe is actively involved in the litigation. Thus, hereafter, we refer only to Keefe.

the Ridingses had assigned their rights under the settlement agreement to Keefe. Thus, Maron concluded that Keefe properly invoked arbitration and informed the parties that they should propose acceptable dates for the arbitration. Despite multiple e-mail communications between Gander/Keenan's and Keefe's counsel, they were unable to set a date in the summer of 2008 for arbitration; Gander/Keenan failed to propose a single date but instead suggested that they *might* be available sometime in October or November. On October 16, Keefe filed a petition for an antiharassment order against Gander/Keenan in Bainbridge Island Municipal Court.

¶7 The municipal court concluded that it had jurisdiction over Keefe's request for an antiharassment order and that the 2006 settlement agreement did not preclude the court's jurisdiction over the antiharassment proceedings. The municipal court then conducted a trial on the merits, found that Gander/Keenan had engaged in a course of unlawful harassment, and issued a permanent antiharassment order against them.

¶8 Gander/Keenan appealed the antiharassment order to the Kitsap County Superior Court. In the superior court, Gander/Keenan argued that the settlement agreement controlled and that neither the municipal court nor the superior court had jurisdiction over the dispute. The superior court agreed and found that section 2.6 of the settlement agreement "clearly addresses the conduct currently at issue" and that the dispute should have been arbitrated. CP at 34-35. The superior court, thus, vacated the perpetual antiharassment order against Gander/Keenan and remanded the dispute for arbitration. The superior court further found that the Ridingses fully assigned the settlement agreement to Keefe. Because of Gander/Keenan's earlier contention that Keefe was not entitled to enforce the settlement agreement in arbitration, the superior court specifically concluded that Gander/Keenan could not argue

on remand that Keefe could not arbitrate under the settlement agreement.[3]

¶9 Gander/Keenan then moved the superior court for attorney fees. Although they made a fleeting reference to the settlement agreement as a basis for awarding attorney fees, Gander/Keenan argued primarily for an award of attorney fees on equitable grounds. Moreover, while arguing their motion for fees in superior court, Gander/Keenan "conceded there was no statutory or contractual basis for fees, but argued for fees under some common law equitable case law and theories." Report of Proceedings (RP) (July 16, 2010) at 3.

¶10 Meanwhile, before the fees argument, Keefe's counsel wrote to Gander/Keenan's counsel requesting he strike his "baseless" motion for attorney fees and informing him that, if he did not, she would pursue "an award of sanctions against [him] personally." CP at 49. Keefe argued that Gander/Keenan's "motion for [attorney] fees was baseless and the [c]ourt should award Ms. Keefe the attorney fees she unnecessarily incurred to respond to this motion." CP at 169. Keefe and the superior court construed this as a motion for CR 11 sanctions.

¶11 The superior court denied both Gander/Keenan's motion for attorney fees and Keefe's request for CR 11 sanctions. Although the superior court's written order was very brief, the court elaborated on its holding in its oral decision. The superior court stated that "there's no basis in the statutes or in the contract between the parties, a settlement agreement[,] to award attorney fees . . . ." RP (July 16, 2010) at 9.

¶12 The superior court also found no equitable basis for awarding Gander/Keenan attorney fees. In reaching this conclusion, it emphasized its concern that Gander/Keenan "resist[ed] arbitration at the trial court level and [the court]

---

[3] The trial court entered written findings of fact and conclusions of law. These findings are not before us.

wanted to make it clear they couldn't do that again." RP (July 16, 2010) at 9. The superior court reiterated that Gander/Keenan responded to Keefe's initial request for arbitration by stating that she was not a successor to the settlement agreement and that she "could not enforce such provisions in arbitration." CP at 33-34. For these reasons, the superior court concluded that there was "no factual basis for [Gander/Keenan's] equitable [attorney fees] argument." RP (July 16, 2010) at 9. Moreover, the superior court further found:

> There's another reason why it wouldn't be fair or equitable to use the equitable theories as a bootstrap for [attorney] fees, and that's the failure to comply with [Rules for Appeal of Decisions of Courts of Limited Jurisdiction (RALJ)] 11.2.
>
> . . . .
>
> Yes, RALJ 11.2 says "should." But [Gander/Keenan's] theory of fees is that . . . Keefe wrongfully put Gander/Keenan to an appeal by refusing to arbitrate, and . . . if that was their theory of fees, that should have been put in their pleadings and argued to the [c]ourt on the merits of the appeal.
>
> There was no hint of this in the materials . . . at the time [the court] decid[ed] the appeal, itself. The first time that this theory surfaced was after [the court] signed the findings and conclusions and the motion for fees was filed, and if [the court] was going to examine the record to resolve that issue, then it should have been presented and argued. The parties should have had an opportunity to know that it was on the table and respond to it back when [the court] was deciding [the merits of the appeal].
>
> . . . .
>
> For that reason . . . it's really not equitable to take it up now, and [the court is] going to exercise its discretion . . . to deny [Gander/Keenan's] application for fees . . . .

RP (July 16, 2010) at 9-10.

¶13 Finally, the superior court denied Keefe's request for sanctions against Gander/Keenan's attorney. The court supported its decision by stating,

[A]ttorneys overuse Civil Rule 11. Civil Rule 11 [is] supposed to be focused on . . . arguments that there's just absolutely no basis for and not things that are a stretch. [Gander/Keenan's] argument for fees was a bit of a stretch, but it's not unmeritorious on its face, and [their] argument on the record is the same.

RP (July 16, 2010) at 11. Thus, the superior court denied both Gander/Keenan's and Keefe's requests for fees. Gander/Keenan and Keefe both appeal the superior court's denial of their respective requests for fees.

## ANALYSIS

### ATTORNEY FEES

A. *Standard of Review*

¶14 Under Washington law, a trial court may grant attorney fees only if the request is based on a statute, a contract, or a recognized ground in equity.[4] *Cmty. Ass'n Underwriters of Am., Inc. v. Kalles*, 164 Wn. App. 30, 38, 259 P.3d 1154 (2011). Washington courts universally agree that we review the reasonableness of an award for attorney fees for an abuse of discretion. *See Morgan v. Kingen*, 166 Wn.2d 526, 539, 210 P.3d 995 (2009); *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 519, 910 P.2d 462 (1996); *Unifund CCR Partners v. Sunde*, 163 Wn. App. 473, 484, 260 P.3d 915 (2011). However, relying on different 2010 cases, Keefe argues that we review a trial court's decision whether to award attorney fees for an abuse of discretion, while Gander argues that our review is de novo. *Hous. Auth. v. Kirby*, 154 Wn. App. 842, 849, 226 P.3d 222, *review denied*, 169 Wn.2d 1022, 238 P.3d 502 (2010), *abrogated by Hous. Auth. v. Bin*, 163 Wn. App. 367, 374-75, 260 P.3d 900 (2011); *Sanders v. State*, 169 Wn.2d 827, 866, 240 P.3d 120 (2010).

---

[4] Gander/Keenan conceded that they had neither a statutory nor a contractual basis for attorney fees and argued exclusively for attorney fees on equitable grounds. We accept Gander/Keenan's concession.

Keefe's and Gander/Keenan's recent interpretation of Washington case law reveals an apparent discrepancy in the standard under which we review a trial court's initial decision whether there is a legal basis upon which to grant or deny attorney fees.

¶15 On first blush, two September 2010 Washington Supreme Court cases appear to apply different standards of review. *In re Marriage of Freeman*, 169 Wn.2d 664, 676, 239 P.3d 557 (2010), states that appellate courts review a trial court's decision granting *or denying* attorney fees for an abuse of discretion while *Sanders*, 169 Wn.2d at 866, states that the decision whether to award attorney fees is a question of law that appellate courts review de novo. The Court of Appeals has similarly applied both abuse of discretion and de novo review to a trial court's threshold decision to grant or deny attorney fees. *See Kitsap County Prosecuting Attorney's Guild v. Kitsap County*, 156 Wn. App. 110, 120, 231 P.3d 219 (2010) (reviewing the trial court's ruling on attorney fees for an abuse of discretion); *Deep Water Brewing, LLC v. Fairway Res. Ltd.*, 152 Wn. App. 229, 277, 215 P.3d 990 (2009) (reviewing a trial court's grant or denial of attorney fees de novo).

¶16 The cases applying de novo review agree that the trial court's threshold determination on whether there is a statutory, contractual, or equitable basis for attorney fees is a question of law that we review de novo. *See Unifund*, 163 Wn. App. at 483-84. For example, we recently held that after applying de novo review to the initial question of whether there is a legal basis for attorney fees, we then review the amount of any attorney fee award for an abuse of discretion. *Unifund*, 163 Wn. App. at 484. Also, Division Three of this court recently concluded that because making the initial determination of whether a particular statute or contractual provision authorizes an award of attorney fees is a question of law, we review that narrow question de novo. *Bank of N.Y. v. Hooper*, 164 Wn. App. 295, 303, 263 P.3d 1263 (2011), *review denied*, 173 Wn.2d 1021, 272 P.3d 850

(2012). Both *Unifund* and *Hooper* applied de novo review to the threshold question of whether there was a contractual or statutory basis for attorney fees, but the analysis is the same for equitable attorney fees because whether there is a recognized ground in equity authorizing an award of attorney fees is a question of law subject to de novo review. *Deep Water Brewing*, 152 Wn. App. at 277; *In re Riddell Testamentary Trust*, 138 Wn. App. 485, 491, 157 P.3d 888 (2007). Thus, we apply a two-part review to awards or denials of attorney fees: (1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion.

## B. *Gander/Keenan's Basis for Attorney Fees*

¶17 Gander/Keenan argues that the superior court erred in denying their equitable request for attorney fees because (1) Keefe's suit required Gander/Keenan to appeal a wrongfully issued antiharassment order and (2) Keefe violated the settlement agreement by filing suit instead of arbitrating. Gander/Keenan also argues that RALJ 11.2 is not jurisdictional and, thus, the superior court improperly relied on RALJ 11.2 in denying their request for attorney fees. We disagree with each of Gander/Keenan's arguments.

¶18 Among the recognized equitable grounds sufficient to support an award of attorney fees as costs or damages are the bad faith or misconduct of a party, "actions by a third person subjecting a party to litigation," and the dissolution of wrongfully issued temporary injunctions.[5]

---

[5] Another potential basis for an equitable award of attorney fees arises if an insured successfully sues their insurer to obtain coverage under an insurance contract. *Olympic S.S. Co. v. Centennial Ins. Co.*, 117 Wn.2d 37, 52, 811 P.2d 673 (1991). Because subsequent cases have limited this basis to insurance contracts, Gander/Keenan incorrectly relies upon *Olympic Steamship* to support their argument for equitable attorney fees. *See McRory v. N. Ins. Co. of N.Y.*, 138 Wn.2d 550, 554-55, 980 P.2d 736 (1999).

*City of Seattle v. McCready*, 131 Wn.2d 266, 274-75, 931 P.2d 156 (1997). The purpose of allowing equitable attorney fees as damages to a party forced into litigation to dissolve a wrongfully issued temporary injunction is to "deter plaintiffs from seeking relief prior to a trial on the merits." *Ino Ino, Inc. v. City of Bellevue*, 132 Wn.2d 103, 143, 937 P.2d 154 (1997). Accordingly, equitable attorney fees incurred in dissolving a wrongfully issued temporary injunction are available only *after a trial on the merits*, where the sole issue at trial was whether to make the temporary injunction permanent or dissolve it, the trial court dissolves the temporary injunction, and the trial was the only available option for the party seeking to dissolve it. *McCready*, 131 Wn.2d at 277; *Cecil v. Dominy*, 69 Wn.2d 289, 291, 418 P.2d 233 (1966).

¶19 For example, an award of equitable attorney fees was appropriate to compensate a man forced into litigation to dissolve a temporary injunction prohibiting him from soliciting business from a former business partner because of their noncompetition agreement. *Cecil*, 69 Wn.2d at 290. The equitable attorney fee award was proper because the enjoined party's only option was to proceed through an entire trial on the merits where the only issue was the propriety of the temporary injunction, which the trial court dissolved. *Cecil*, 69 Wn.2d at 293-94. Nonetheless, the allowance of equitable attorney fees for dissolving a wrongfully issued temporary injunction "does not entitle a successful defendant to recover all fees incurred in defending against injunctive relief." *Ino Ino*, 132 Wn.2d at 144.

¶20 Gander/Keenan argues that *Cecil* supports the proposition that equitable attorney fees are appropriate and any restraining order is wrongful if a court dissolves it after a full hearing and contends that the superior court here conducted a full hearing and dissolved the municipal court's antiharassment order, and, thus, the municipal court's antiharassment order was wrongful. 69 Wn.2d at 293-94. But Gander/Keenan's position significantly extends

the holdings in *Cecil* and subsequent cases relying on it. *See Ino Ino*, 132 Wn.2d at 143-45. Instead, *Cecil* stands for the proposition that equitable attorney fees may be appropriate as damages if the *sole purpose* of a trial on the merits is to determine whether to extend or dissolve a temporary injunction. 69 Wn.2d at 293-94.

¶21 Here, however, Keefe and Gander/Keenan proceeded through a trial on the merits of Keefe's harassment claim in municipal court. At the culmination of that trial on the merits, the municipal court entered a permanent antiharassment order against Gander/Keenan. Gander/Keenan then appealed the municipal court's permanent antiharassment order to superior court. The superior court reversed the municipal court's permanent antiharassment order, finding that neither the municipal nor the superior court had jurisdiction over the dispute, and remanded for arbitration according to the settlement agreement. The superior court explicitly stated that it "did not address the merits of the antiharassment dispute, even though invited to do so on appeal, ruling instead that the parties were in the wrong forum to begin with." RP (July 16, 2010) at 2. Thus, the superior court did not conduct a trial on the merits. Moreover, the municipal court issued its *permanent* antiharassment order *after* it conducted a full trial on the merits.

¶22 Therefore, *Cecil* does not support Gander/Keenan's claim for equitable attorney fees as damages because the municipal court issued its antiharassment order after its trial on the merits, not before, and the antiharassment order here was permanent, not temporary. 69 Wn.2d at 293. Then, Gander/Keenan appealed the municipal court's permanent antiharassment order to superior court, but the superior court did not conduct a trial on the merits of their claim. Instead, the superior court vacated the municipal court's antiharassment order on jurisdictional grounds and remanded for arbitration of the harassment issue. Thus, based on the facts in this case, *Cecil*'s narrow holding

allowing for attorney fees as damages where a party is forced to litigate in a trial on the merits, focused solely on vacating a temporary injunction, does not apply. Moreover, the purpose underlying the narrow availability of equitable attorney fees under *Cecil* is to deter plaintiffs from seeking injunctive relief before litigating the merits of their claim. *Ino Ino*, 132 Wn.2d at 143. Keefe's conduct here did not violate that purpose; rather, Keefe attempted to initiate arbitration and, when those efforts stalled, resorted to protection under Washington's antiharassment statutes in municipal court, which that court granted at the conclusion of a trial on the merits. Therefore, Gander/Keenan's argument that there is an equitable basis to award attorney fees fails.

¶23 Moreover, Gander/Keenan's conduct leading up to the antiharassment suit does not support their claim for equitable attorney fees. Here, the record shows that Keefe initiated arbitration under the settlement agreement by a written request for arbitration to Maron, the arbitrator designated in the settlement agreement, and by responding to Maron's request for a written explanation of his authority to arbitrate this issue. The record also shows that Gander/Keenan objected to arbitration, stating that "Keefe does not have a status or rights under the Settlement Agreement . . . . Thus Ms. Keefe can raise no issues relating to the Settlement Agreement." CP at 99-100.

¶24 Shortly after Maron informed both parties that Keefe properly invoked arbitration in June 2008, rather than proposing a date for arbitration as Maron requested, Gander/Keenan unsuccessfully requested Maron withdraw as arbitrator based on a potential conflict of interest. Indeed, despite a trail of e-mail communication between the attorneys, by October 2008, Gander/Keenan had not yet proposed a date for arbitration and they were unavailable for the dates Keefe proposed. Rather than an unequivocal commitment to arbitrate this dispute, in August 2008, two months after Maron found Keefe properly initi-

ated arbitration, Gander/Keenan stated that they might be available in October or November. With apparently no other communication between counsel, Keefe filed suit in municipal court for an antiharassment order on October 16. Because Gander/Keenan strenuously contested Keefe's ability to arbitrate under the settlement agreement and then postponed even scheduling the arbitration for months, the facts do not support Gander/Keenan's argument that they are entitled to equitable attorney fees.

¶25 Lastly, Gander/Keenan argues that RALJ 11.2 is permissive and, thus, it is immaterial that they did not request attorney fees in their opening brief at the superior court. But the superior court did not find RALJ 11.2 to be either mandatory or jurisdictional.

¶26 RALJ 11.2 states:

> **(a) Generally.** If applicable law grants to a party the right to recover reasonable lawyer's fees or expenses, the party *should* request the fees or expenses as provided in this rule.
>
> . . . .
>
> **(c) Argument in Brief.** The party *should* devote a section of the brief to the request for the fees or expenses.
>
> **(d) Affidavit.** At or before oral argument, the party *should* serve and file an affidavit in the superior court detailing the expenses incurred and the services performed by counsel.

(Emphasis added.) The superior court distinguished the mandatory RAP 18.1 requirement that a party request attorney fees in their opening brief from RALJ 11.2 because, "Yes, RALJ 11.2 says 'should.' " RP (July 16, 2010) at 9-10. Nonetheless, the superior court found that Gander/ Keenan's noncompliance with the RALJ's recommendation that "[t]he party should devote a section of the brief to the request for fees or expenses [and] [a]t or before oral argument the party should serve and file an affidavit . . . detailing the expenses incurred and services performed by counsel" weighed against their request for equitable attorney fees. RALJ 11.2(c)-(d). Gander/Keenan instead opted to

move for attorney fees *after* the court made its oral ruling; the trial court believed their surprise tactics undermined their argument for equitable attorney fees. Thus, the superior court did not find that failure to comply with RALJ 11.2 was jurisdictional, just that it undercut their argument for equitable attorney fees. Therefore, Gander/Keenan's argument fails.

¶27 Gander/Keenan failed to show they have an equitable basis for attorney fees. Because they failed to present any authority or persuasive arguments for reversing the superior court's denial of their request for attorney fees, we affirm the superior court and dismiss their appeal.

¶28 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record in accordance with RCW 2.06.040, it is so ordered.

VAN DEREN and JOHANSON, JJ., concur.