FILED
COURT OF APPEALS
DIVISION II

2013 JUL 23 AM 9: 16

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

In the Matter of the Parentage of B.J.H.,
Child,

JAMES HAMILTON,

Respondent,

and

MICHELLE A. BALDWIN, now JOHANSEN,
Mother,

v.

DEPARTMENT OF SOCIAL AND HEALTH
SERVICES,

Appellant.

No. 43094-1-II

UNPUBLISHED OPINION

McCARTHY, J.P.T.[1] — The Department of Social and Health Services Division of Child

Support (DCS) appeals a trial court's attorney fees award to James Hamilton following DCS's

attempt to establish Hamilton's support obligation for his 16-year-old daughter who had run

away from home. The trial court ordered DCS to pay Hamilton the child support that DCS had

collected from the child's mother while the child lived with relatives, and it also awarded

Hamilton $12,000 for attorney fees under (1) RCW 4.84.350, (2) RCW 4.84.185, and (3) RCW

---

[1] Judge John A. McCarthy is serving as judge pro tempore of the Court of Appeals, Division II, under CAR 21(c).

26.26.140. We hold that the trial court erred in awarding Hamilton fees because the trial court relied on inapplicable statutes. Accordingly, we vacate the attorney fees award and remand to the trial court for further proceedings.

## FACTS

Hamilton is the biological father and legal physical custodian of BJH.[2] In July 2010, BJH ran away from home. BJH stayed with her boyfriend and at a youth shelter before moving in with her stepaunt and uncle, the Shoots. The Shoots promptly contacted Child Protective Services (CPS) to report that BJH had run away from home and was staying with them. CPS interviewed BJH, Hamilton, and the Shoots. CPS determined that although Hamilton preferred BJH to return home and abide by his rules, he did not want to force her to do so. Hamilton agreed that BJH could stay with the Shoots, but he refused to sign any custodial agreement, financially assist the Shoots in taking care of BJH, or sign any paperwork allowing the Shoots to enroll BJH in school.

Karen Shoot then applied to DCS for support enforcement services and public assistance for BJH. As part of the application, Karen Shoot attested that she had physical custody of BJH and that she did not wrongfully deprive the legal physical custodian of custody. After the Shoots applied for public assistance for BJH's care, DCS stopped distributing support payments to Hamilton that it collected from BJH's mother.[3] On August 27, 2010, DCS sent Hamilton notice that it was enforcing a 1996 child support order entered in Grays Harbor County Superior Court

---

[2] We refer to BJH, a minor, by her initials to protect her privacy.

[3] DCS distributed these support payments directly to the Shoots or used them to reimburse the State for public assistance paid for BJH's care.

that set his support obligation at $390.66 per month.[4] Hamilton called DCS and claimed that he should not have to pay support for the month of August because BJH lived with him in August; DCS treated the telephone call as an oral hearing request. Once Hamilton's attorney informed DCS that the 1996 order it was enforcing had been superseded by a 2007 order, making Hamilton BJH's legal custodian and ending Hamilton's support obligation, DCS withdrew the notice of support debt and demand for payment.

On September 5, Hamilton reported BJH as a runaway. The sheriff's office contacted the Shoots and confirmed with CPS that Hamilton knew that BJH was with the Shoots and that he had given permission for her to stay there. Hamilton also contacted CPS to discuss the support paperwork he received from DCS. CPS told Hamilton that CPS did not place BJH, that she was staying with the Shoots with his permission, and that he had a custody order that he could enforce if he chose to do so. Hamilton reiterated to CPS that BJH could remain with the Shoots but he would not provide any support or sign any documents to make BJH's life easier.

On November 18, DCS served Hamilton with an administrative notice and finding of financial responsibility to establish his child support obligation.[5] The matter was set for a hearing because Hamilton claimed that he did not consent to BJH living with the Shoots and,

---

[4] When DCS receives an application for public assistance on behalf of a child, DCS is required to take appropriate action to establish or enforce support obligations against the parent or other persons owing a duty to pay support moneys. Former RCW 74.20.040(1) (2007).

[5] If public assistance is paid for the care and maintenance of a child, the State may pursue a support action to obtain reimbursement of the monies expended. RCW 74.20A.030; *In re Parentage of I.A.D.*, 131 Wn. App. 207, 217, 126 P.3d 79 (2006). In the absence of a controlling superior court order setting a responsible parent's support obligation, DCS can set support obligations administratively. RCW 74.20A.055(1).

3

thus, he was wrongfully deprived of custody.[6] The administrative hearing was continued numerous times at Hamilton's request because he wanted his child support obligation determined by a court. On November 22, Hamilton filed an at-risk-youth petition; the trial court granted the petition and ordered BJH to return to Hamilton's home at the conclusion of her school semester.

On January 20, 2011, Hamilton filed a petition to modify the 2007 child support order, requesting that the trial court recalculate BJH's mother's support obligation and award him back child support that DCS had collected from BJH's mother during the time BJH lived with the Shoots. Hamilton also moved for orders setting his back support obligation at zero and awarding him attorney fees against DCS. Although DCS filed a notice of appearance in the superior court modification case, it did not file a response to Hamilton's petition or motions.

At the motion hearing, DCS argued that Hamilton was not entitled to the support payments that DCS collected from BJH's mother and withheld from Hamilton during the period that BJH lived with the Shoots. DCS did not litigate Hamilton's back support obligation, which was set at zero. The trial court ruled that DCS could not retain the child support it had collected from BJH's mother during the period that BJH lived with the Shoots. The trial court further entered an order of child support setting Hamilton's back support obligation at zero, awarded a judgment of $1,676 against DCS for the withheld support, and reserved an award of attorney fees. Once the order relieving Hamilton of back child support was provided to DCS, DCS dismissed the pending administrative action seeking child support from Hamilton.

---

[6] DCS is authorized to excuse support payments from a legal custodian who has been wrongfully deprived of physical custody of the child. RCW 74.20.065.

Months later, in a separate order, the trial court ordered DCS to pay Hamilton $12,000 for attorney fees. DCS timely appeals only the award of attorney fees.[7]

ANALYSIS

DCS argues that the trial court erred in awarding attorney fees to Hamilton because attorney fees are not warranted under any of the statutory bases the trial court relied on. The trial court concluded that an award of attorney fees against DCS was statutorily authorized by (1) RCW 4.84.350 for prevailing in judicial review of an agency action, (2) RCW 4.84.185 for responding to a frivolous action, and (3) RCW 26.26.140 for costs under the Uniform Parentage Act, 26.26 RCW. We agree with DCS that the trial court erred, and we vacate the attorney fees award to Hamilton.

I.    STANDARD OF REVIEW

A trial court may grant attorney fees only if authorized by contract, statute, or a recognized ground in equity. *Gander v. Yeager*, 167 Wn. App. 638, 645, 282 P.3d 1100 (2012). We apply a two-part review standard to orders involving attorney fees: "(1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion." *Gander*, 167 Wn. App. at 647. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. *State v. Dixon*, 159 Wn.2d 65, 76, 147 P.3d 991 (2006).

---

[7] DCS does not appeal the underlying judgment for the withheld child support of $1,676.

No. 43094-1-II

## II. RCW 4.84.350—Prevailing Party in Judicial Review of Agency Action

The trial court identified RCW 4.84.350[8] as a basis for the fees award and concluded that Hamilton was entitled to fees because he had prevailed in judicial review of agency action. We disagree because the superior court proceeding did not constitute judicial review of agency action.

For purposes of awarding fees under RCW 4.84.350, "judicial review" means judicial review as provided under the Administrative Procedures Act (APA), chapter 34.05 RCW. RCW 4.84.340(4). The APA does not define "judicial review," but Part V of the statute governs judicial review. RCW 34.05.510-.598. The APA provides the exclusive means for judicial review of agency action. RCW 34.05.510. RCW 34.05.570(3) and (4) provide for judicial "[r]eview of agency orders in adjudicative proceedings" and judicial "[r]eview of other agency action." Under those provisions, only *final* agency actions are subject to judicial review. *Wells Fargo Bank, NA v. Dep't of Revenue*, 166 Wn. App. 342, 356, 271 P.3d 268, 276, *review denied*, 175 Wn.2d 1009 (2012). "An agency action is final when it 'imposes an obligation, denies a right, or fixes a legal relationship as a consummation of the administrative process.'" *Wells Fargo Bank*, 166 Wn. App. at 356 (internal quotation marks omitted) (quoting *Bock v. State Bd. of Pilotage Comm'rs*, 91 Wn.2d 94, 99, 586 P.2d 1173 (1978)).

The trial court considered Hamilton to have prevailed in judicial review of agency action because DCS attempted to administratively set Hamilton's support obligation at $617 per month while BJH lived with the Shoots, but the superior court ruled that Hamilton did not owe any back support for that period. The trial court's order states:

---

[8] RCW 4.84.350(1) provides, "[A] court shall award a qualified party that prevails in a judicial review of an agency action fees and other expenses, including reasonable attorneys' fees."

6

> Hamilton met his burden of showing that he has prevailed in a judicial review of agency action under RCW 4.84.350. Had . . . Hamilton not responded to the administrative action, [DCS] would have entered support orders against him. He appeared by phone at at least two of these administrative hearings and had to obtain contested continuances from the Administrative Law Judge. The Shoots contested the continuances.

Clerk's Papers (CP) at 503.

In the absence of a controlling superior court order setting a responsible parent's support obligation, DCS may set support obligations administratively. RCW 74.20A.055(1). An administrative support order will be superseded to the extent an inconsistent order is entered by a superior court. RCW 74.20A.055(7). Thus, the administrative process parallels the judicial process for determining child support obligations.

DCS attempted to administratively set Hamilton's support obligation; it sent Hamilton a notice and finding of financial responsibility to which Hamilton objected and requested an administrative hearing. But the administrative hearing never occurred because Hamilton obtained multiple continuances to allow the superior court to determine his support obligation.

Hamilton filed for a modification of the 2007 child support order and requested, among other things, that the superior court set his child support obligation to zero for the period BJH lived with the Shoots. After the trial court entered an order relieving Hamilton of support obligations during that period, DCS dismissed the administrative action before any administrative hearing was held or ruling was issued.

Thus, there was no final agency action for the superior court to review. Hamilton's suit in superior court was not judicial review of agency action; it was a separate proceeding Hamilton instituted to avoid the administrative process. Accordingly, we hold that the attorney fees award to Hamilton for prevailing in a judicial review of agency action was erroneous.

III.    RCW 4.84.185—FRIVOLOUS ACTION

DCS next argues that the trial court erred by awarding Hamilton attorney fees under RCW 4.84.185.  Again, we agree.

Under RCW 4.84.185, in any civil action, a court may award attorney fees to the prevailing party if the action is "frivolous and advanced without reasonable cause."  An action is frivolous if it cannot be supported by any rational argument on the law or facts.  *Clarke v. Equinox Holdings, Ltd.*, 56 Wn. App. 125, 132, 783 P.2d 82 (1989).

Hamilton argued that DCS's attempt to set support administratively and to withhold from him the support BJH's mother paid constituted frivolous agency action under RCW 4.84.185.  DCS responded that defense of its position was not frivolous because it had statutory authority and a factual basis to distribute support to the Shoots (or reimburse the State) under RCW 26.23.035(2).  The trial court rejected DCS's argument and authority and entered an order awarding fees against DCS, stating that Hamilton had "demonstrated that [DCS]'s response to his petition and motions were frivolous or advanced without reasonable cause as required by RCW 4.84.185." CP at 503.

The majority of Hamilton's petition and motions did not involve DCS.  The two issues that involved DCS were Hamilton's request that his support obligation for the period that BJH lived with the Shoots be set at zero and his request that he receive the back support that DCS had collected from BJH's mother but not distributed to him.

DCS did not litigate Hamilton's back support obligation in superior court.  DCS attempted to administratively set Hamilton's support obligation, but the matter was continued to allow Hamilton to have the matter decided in superior court.  By the time Hamilton filed his petition in superior court, BJH had returned to Hamilton's home as a result of the at-risk-youth

8

petition proceeding. The monthly support paid by BJH's mother was sufficient to reimburse all but $184 of the amount paid in public assistance for BJH's care during the time she lived with the Shoots. Because of the small amount of money at issue, DCS did not contest Hamilton's support obligation being set at zero. DCS dismissed its administrative action after the superior court entered its order.

The only issue DCS litigated was whether DCS owed Hamilton back support payments that it collected from BJH's mother during the period that BJH lived with the Shoots.[9] The trial court ruled that DCS was not authorized to distribute the support payments to Karen Shoot because there was no legal assignment of custody to Karen Shoot.

DCS maintains on appeal, as it did in its memorandum on attorney fees to the trial court, that its position was not frivolous or advanced without reasonable cause because DCS was statutorily authorized to pay the support it collected from BJH's mother to the Shoots rather than to Hamilton. We agree.

DCS relies on RCW 26.23.035(2), which provides:

> The division of child support may distribute support payments to the payee under the support order or to another person who has lawful physical custody of the child or custody with the payee's consent. . . . Prior to distributing support payments to any person other than the payee, the registry shall:
>     (a) Obtain a written statement from the child's physical custodian, under penalty of perjury, that the custodian has lawful custody of the child or custody with the payee's consent.

---

[9] Whether DCS distributed the support payment from BJH's mother directly to the Shoots or retained the money as reimbursement for public assistance paid to the Shoots for BJH's care is immaterial. Payment of public assistance operates as an assignment by operation of law of any rights to a support obligation from another person. RCW 74.20.330; *see also* RCW 74.20A.030 (authorizing the State to pursue a support action to obtain reimbursement for public assistance monies expended for care and maintenance of a child). Thus, if the Shoots were entitled to distribution of support payments for BJH, that right was assigned to the State by operation of law when the Shoots accepted public assistance for BJH's care.

DCS argues that RCW 26.23.035(2) authorized it to distribute support payments to Karen Shoot because she had custody of BJH with Hamilton's consent and DCS obtained a declaration from Karen Shoot stating under penalty of perjury that she did not wrongfully deprive Hamilton of custody of BJH.

Although we are not a fact-finder on this issue, we consider the evidence in the record as part of our review of whether DCS's position was frivolous. Our review of the record before the trial court shows that DCS had evidence that Hamilton knew that BJH was staying with the Shoots and for months DCS also believed that he did not require her or attempt to get her to return home. Hamilton said that although he wanted BJH to return home on her own, he did not want to force her to return. And CPS records show that Hamilton repeatedly told its workers that BJH could remain at the Shoots' home.

It appears that Hamilton's early consent or acquiescence waned when DCS determined that he needed to provide support for his daughter; and he eventually forced BJH to return home by filing an at-risk-youth petition in late November. Hamilton's decision to file the at-risk-youth petition is evidence that he withdrew his prior consent or acquiescence to BJH living with the Shoots. But evidence of Hamilton's position during the preceding five months is consistent with DCS's argument that the Shoots had custody of BJH with Hamilton's consent between July and November.

Karen Shoot's application to DCS for nonassistance support enforcement includes a declaration signed under penalty of perjury that she "[d]id not wrongfully deprive the legal physical custodian of custody of the child." CP at 254. DCS argues that the declaration satisfies the statutory requirement for a written statement from the child's physical custodian that the custodian had custody with the payee's consent. Hamilton argues that Shoot's declaration is

10

insufficient. Because the language from the declaration does not parallel the language in RCW 26.23.035, reasonable minds may disagree about whether Karen Shoot's declaration that she did not wrongfully deprive Hamilton of custody satisfies the statutory requirement of a written statement that she had physical custody with Hamilton's consent. But the issue is at least debatable, and in light of the additional evidence DCS asserted, its position is not frivolous.

DCS's position is frivolous only if it cannot be supported by any rational argument on the law or facts. *Clarke*, 56 Wn. App. at 132. Based on Karen Shoot's declaration signed under penalty of perjury and the information provided to DCS from the Shoots and CPS, we hold that DCS's position that it was authorized to pay support to the Shoots rather than Hamilton (and, thus, Hamilton was not entitled to back support) was not frivolous or advanced without reasonable cause as RCW 4.84.185 requires. Accordingly, the trial court erred in concluding that RCW 4.84.185 provided a basis for an attorney fees award to Hamilton.

IV.   RCW 26.26.140—UNIFORM PARENTAGE ACT

Finally, DCS argues that the trial court erred by awarding Hamilton fees under RCW 26.26.140. The parties dispute whether RCW 26.26.140 should apply to the modification action.

RCW 26.26.140 provides that an attorney fees award against a State agency, such as DCS, shall be determined under RCW 4.84.185.[10] Because the trial court relied on RCW 4.84.185 as an independent basis for awarding fees, we address it regardless of whether RCW 26.26.140 applies. Thus, since we have already determined that DCS's position was not

---

[10] RCW 26.26.140 provides, "The court may order that all or a portion of a party's reasonable attorney's fees be paid by another party, except that *an award of attorney's fees assessed against the state or any of its agencies or representatives shall be under RCW 4.84.185*." (Emphasis added.)

11

frivolous and RCW 4.84.185 does not apply, whether RCW 26.26.140 applies is irrelevant and we do not address it further.

## V.   ATTORNEY FEES ON APPEAL

In one sentence of his brief, Hamilton requests that he be awarded "reasonable attorney's fees for having to respond to this appeal." Br. of Resp't at 22-23. This is an inadequate request for fees because Hamilton has not provided argument and citation to authority to establish that an attorney fee award is warranted. RAP 18.1(b); *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 704-05, 915 P.2d 1146 (1996). We deny Hamilton's request for fees on appeal.

## VI.   CONCLUSION

Hamilton was not entitled to fees under the statutes the trial court relied on and, thus, the trial court erred in awarding attorney fees to him. Accordingly, we vacate the attorney fees award and remand to the trial court for further proceedings. [11]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
McCARTHY, J. P.T.

We concur:

_____
JOHANSON, J.

_____
WORSWICK, C.J.

---

[11] Because we vacate the attorney fees award in its entirety, we do not reach DCS's argument that the trial court miscalculated the amount of the award. But we note that even if attorney fees were warranted for every hour Hamilton identified as related to the back support issue (including those at the administrative level), it appears that the trial court erroneously doubled that amount.

12