IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| ROUZBEH SAFAVI AMINPOUR and MARYAM AMINPOUR, a married couple,<br><br>　　　　　Appellants,<br><br>　　v.<br><br>CHRISTIAN M. ENGLUND and ERICA R. ENGLUND, a married couple, and MAX N. TRUMPOWER and JEANNE ROSENBERG, a married couple,<br><br>　　　　　Respondents. | No. 82908-4-I (consolidated with No. 83340-5-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — This private condemnation action arises from a property dispute

between adjacent residential property owners Rouzbeh and Maryam Aminpour (the

Aminpours) and Christian and Erica Englund, Max Trumpower, and Jeanne Rosenberg

(collectively the Englunds).[1] The Aminpours appeal the trial court's orders denying their

CR 41(b)(3) motion to dismiss and granting the Englunds their requested condemnation

of a private way of necessity over an existing driveway on the Aminpours' property. The

---

[1] Christian and Erica Englund purchased their property as tenants in common with Erica's parents, Max Trumpower and Jeanne Rosenberg, who reside in California.

Aminpours also contend the trial court improperly denied them an opportunity to seek statutory attorneys' fees. We affirm.

FACTS

The Englunds and the Aminpours own adjacent rural residential properties of approximately 2 1/2 acres each in unincorporated King County near Redmond, Washington. The Englund property lies directly to the north of the Aminpour property. The Englunds purchased their property in 2012 after having rented the house on the property for 1 year beginning in 2011. The Aminpours purchased their property as a vacant lot in January 2019 and began constructing a single-family home there in July 2020. In March 2019, the Aminpours purchased a separate tax parcel consisting of a rectangular strip of land approximately 30 feet wide and 1/3 of an acre adjoining their property to the west (the Western Aminpour Parcel). This parcel was previously owned by King County, which owned it for 27 years before selling it to an investor, who in turn sold it to the Aminpours for $3,250.

The Englund and Aminpour properties utilize a common driveway for vehicular access. The driveway is a dirt and gravel road approximately 10 feet wide that has been in use for decades and predates the construction of any residence on the Englund or Aminpour properties. The physical driveway is largely located within the Western Aminpour Parcel. It is undisputed that this driveway serves as the only presently developed vehicular access to both properties. The short plats that created the Englund and Aminpour properties included an express and recorded 30-foot easement

2

appurtenant for ingress and egress (the Private Easement), but this easement remains wholly undeveloped.[2]



TRIAL EXHIBIT 057                                                PLTFS_000246

Shortly after purchasing the Western Aminpour Parcel, the Aminpours installed a gate across the driveway and asked the Englunds to enter into an express easement conditioning their use of the driveway. The Englunds rejected the Aminpours' proposal.

---

[2] A different easement recorded in 1914 granted a logging company a private right of way through what is now the Englund property. That easement is referenced in the trial court's findings of fact, but is not at issue in this appeal.

In December 2019, the Aminpours filed a complaint against the Englunds seeking a declaratory judgment that the Englunds had not acquired a prescriptive or implied easement over the driveway and that the Aminpours are allowed to use the driveway gate. The Aminpours later amended their complaint to assert additional claims, including express easement rights in the driveway. The Englunds asserted counterclaims against the Aminpours, including a declaratory judgment for adverse possession or easement rights to the driveway.

On cross motions for summary judgment, the trial court ruled that the Englunds had no existing adverse possession or easement rights in the driveway and that the Private Easement provides legal access to the Englund property. The Englunds then amended their complaint to assert a condemnation claim for a private way of necessity over the Western Aminpour Parcel pursuant to chapter 8.24 RCW. The Englunds argued that the cost and logistics to build and develop a new driveway through the Private Easement would be uncertain, burdensome, and prohibitively expensive.

The Englunds' private condemnation claim was the central focus of the bench trial that followed. Both parties presented expert evidence regarding the costs associated with developing a new driveway within the Private Easement and the value and use of the Western Aminpour Parcel if not encumbered by the existing driveway. At the end of the Englunds' presentation of evidence, the Aminpours moved to dismiss the Englunds' condemnation claim under CR 41(b)(3). The trial court denied the motion.

At the conclusion of the bench trial, the court issued findings of fact and conclusions of law granting the Englunds a private way of necessity in the existing driveway across the Western Aminpour parcel. The court also determined that each

4

party should bear its own attorneys' fees and costs. The court subsequently entered judgment in favor of the Englunds and ordered them to pay the Aminpours $2,500, the reasonable value of the condemned private way of necessity.

The Aminpours appealed.

ANALYSIS

I. Applicable Standards of Review

The Aminpours contend that the trial court erred first, by denying their midtrial CR 41(b)(3) motion to dismiss. Second, they challenge the trial court's ultimate decision, after a bench trial, granting the Englunds a private way of necessity in the existing driveway over the Western Aminpour Parcel.

The parties dispute the appropriate standard of review, with the Aminpours at one point claiming that the trial court's decision is a " 'manifest abuse of discretion' that precluded dismissal." But the applicable standard of review here is not the abuse of discretion standard. Under CR 41(b)(3), dismissal is proper "if there is no evidence, or reasonable inferences therefrom, that would support a verdict for the plaintiff." Willis v. Simpson Inv. Co., 79 Wn. App. 405, 410, 902 P.2d 1263 (1995).

> In granting a motion to dismiss under CR 41(b)(3), the court may weigh the evidence and make a factual determination that the plaintiff has failed to come forth with credible evidence of a prima facie case, or the court may view the evidence in the light most favorable to the plaintiff and rule as a matter of law that the plaintiff has failed to establish a prima facie case.

Hendrickson v. Dep't of Labor & Indus., 2 Wn. App. 2d 343, 352, 409 P.3d 1162, review denied, 190 Wn.2d 1030, 421 P.3d 450 (2018).

However, if the court *denies* a CR 41(b)(3) motion, and the claim proceeds to a bench trial, "appellate review is limited to whether substantial evidence supports the trial court's findings and whether the findings support its conclusions of law." In re Dependency of Schermer, 161 Wn.2d 927, 940, 169 P.3d 452 (2007); see also Hegwine v. Longview Fibre Co., 132 Wn. App. 546, 555, 132 P.3d 789 (2006). Substantial evidence is that which would persuade a fair-minded, rational person of the truth of the finding. In re Estates of Palmer, 145 Wn. App. 249, 265-66, 187 P.3d 758 (2008). The Aminpours did not assign error to any of the trial court's findings of fact. We treat unchallenged findings of fact as verities on appeal. In re Estate of Jones, 152 Wn.2d 1, 8, 93 P.3d 147 (2004). Under RAP 10.3(g), we will not review evidence to determine its sufficiency as to unchallenged factual findings.

Whether the trial court erred in determining the applicable law and applying it to established facts after trial is a question of law that we review de novo. Erwin v. Cotter Health Ctrs., 161 Wn.2d 676, 687, 167 P.3d 1112 (2007). Because the court denied the Aminpours' CR 41(b)(3) motion and issued unchallenged findings of fact, any error relating to the court's interpretation of the proper legal standard for the condemnation claim—i.e., whether the court applied the "reasonable necessity" test under RCW 8.24.010 rather than the balancing test under RCW 8.24.025—is subject to de novo review.

II. Private Way of Necessity

The Washington State Constitution provides that "[p]rivate property shall not be taken for private use, except for private ways of necessity." CONST. art. I, § 16. Chapter

6

8.24 RCW governs condemnation proceedings for a private way of necessity.

Washington's private condemnation statute, RCW 8.24.010, provides, in relevant part:

> An owner, or one entitled to the beneficial use, of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity . . . may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity.

The doctrine of easement by necessity is based on the policy that landlocked property should not be rendered useless, and the landlocked landowner is entitled to the beneficial uses of the land. Kennedy v. Martin, 115 Wn. App. 866, 868-70, 63 P.3d 866 (2003).

However, "[t]he need for a way of necessity does not have to be absolute." Ruvalcaba v. Kwang Ho Baek, 175 Wn.2d 1, 7, 282 P.3d 1083 (2012). Even where the property is not landlocked, courts are authorized to order private condemnation if "reasonably necessary under the facts of the case, as distinguished from merely convenient or advantageous." Brown v. McAnally, 97 Wn.2d 360, 367, 644 P.2d 1153 (1982); see also State ex rel. Carlson v. Superior Court, 107 Wash. 228, 232, 181 P. 689 (1919) ("[T]he taking will not be tolerated unless the necessity is paramount in the sense that there is no other way out or that the cost is prohibitive."). "The condemnor has the burden of proving the reasonable necessity for a private way of necessity, including the absence of alternatives." Noble v. Safe Harbor Family Pres. Tr., 167 Wn.2d 11, 17, 216 P.3d 1007 (2009) (citing Carlson, 107 Wash. at 234). In this context, "reasonably necessary" is strictly construed. Brown, 97 Wn.2d at 370.

In the event that the trial court determines that the condemnor is entitled to a private way of necessity and more than one possible route exists, RCW 8.24.025

permits the court to choose among alternative proposed routes. Sorenson v. Czinger,

70 Wn. App. 270, 275, 852 P.2d 1124 (1993). Specifically, the statute provides:

> If it is determined that an owner, or one entitled to the beneficial use of
> land, is entitled to a private way of necessity and it is determined that
> there is more than one possible route for the private way of necessity, the
> selection of the route shall be guided by the following priorities in the
> following order:
> (1)  Nonagricultural and nonsilvicultural land shall be used if
> possible.
> (2)  The least-productive land shall be used if it is necessary to
> cross agricultural land.
> (3)  The relative benefits and burdens of the various possible routes
> shall be weighed to establish an equitable balance between the benefits to
> the land for which the private way of necessity is sought and the burdens
> to the land over which the private way of necessity is to run.

RCW 8.24.025. The condemnor must show that the chosen route is more equitable than

the alternative. Kennedy, 115 Wn. App. at 870.

The Aminpours first argue that the trial court improperly balanced equities under

RCW 8.24.025 without first determining reasonable necessity, as required by RCW

8.24.010. In support of this claim, the Aminpours point to the trial court's oral ruling

denying their CR 41(b)(3) motion to dismiss. There, the trial court ruled as follows:

> With respect to really the threshold motion as it relates to *whether there's
> a prima facie showing of necessity* under RCW 8.24.025, I'm also denying
> the motion to dismiss. And I think *this issue of necessity has multiple
> layers* as the — I think the lawyers have outlined in their — in their
> argument. It is not only cost, but I think waste is a part of that equation.
> And, again, I'm looking at all the evidence in the light most favorable to the
> non-moving party, and there is evidence here of both cost and waste for
> — if — if the Englunds were to be required to employ the short plat
> easement as their means of ingress and egress. So I'm denying the
> motion.

(Emphasis added.)

We agree that RCW 8.24.025 is not applicable to this dispute. That statute comes into play only where "it is determined that there is more than one possible route for the private way of necessity exists," and the court is asked to choose among the alternatives. Here, only one potential route for a private way of necessity was at issue— the existing driveway across the Western Aminpour Parcel. Although the court's oral ruling denying the CR 41(b)(3) motion to dismiss referenced RCW 8.24.025, it is readily apparent that the court properly based its ruling on the threshold determination of reasonable necessity required by RCW 8.24.010. The trial court expressly stated that the issue was "whether there's a prima facie showing of necessity" and ruled that the Englunds met this threshold burden, viewing the evidence of both cost and waste in the light most favorable to the Englunds. In any event, because the court denied the CR 41(b)(3) motion, our focus on review is the final order.

The Aminpours next contend that the court erred as a matter of law by failing to determine whether developing the Private Easement would be cost prohibitive and instead focusing on the ease of using the existing driveway. Unlike the trial court's oral ruling on the midtrial CR 41(b)(3) motion, its written findings of fact and conclusions of law do not reference RCW 8.24.025.  Instead, the court correctly referenced applicable case law regarding the condemnor's burden to show that condemnation of a private way of necessity is reasonably necessary under RCW 8.24.010.

In concluding that private condemnation was reasonably necessary, the court was required to determine whether the expense to construct a driveway over the Private Easement was "prohibitive." Carlson, 107 Wash. at 232. The court's unchallenged findings of fact, which are verities on appeal, established the following:

33. Development of the Private Easement to provide ingress and egress access to the Englund Property is physically possible, but unreasonable given the facts of this case and the circumstances surrounding the practicalities in using a fully functional existing road which affords minimal impact to either party. Expending money, time, and potentially damaging the environment, by building a new road would be intrinsically wasteful.

34. To create a new road would require connecting to other portions of the private Driveway within the same Private Easement and, ultimately, public roads, by building approximately 500 feet of new driveway. The work involved would require clearing, grading, and crossings of a seasonal creeks through piping or culverts over the 500-foot stretch through the Private Easement.

35. Despite the experts' confidence, there is no guarantee that that King County and any other relevant government authorities would grant permits for developing such access to the Englund Property through the Private Easement.

36. Such development will have impact on critical areas and the seasonal spring creek. The ostensible remedy for this environmental waste would be wetland mitigation on site or the purchase of mitigation credits. Neither of these options make sense, particularly when there is an adequate road for the parties to use already in place and the actual benefits of a new road are few, if any.

37. Both parties presented evidence regarding the costs associated with development of a new driveway within the Private Easement. Defendants presented evidence from Terry Hurley of Earthwork Exchange, LLC, while Plaintiffs provided testimony from Richard Deccio, a licensed civil engineer experienced in road designs and their accompanying costs.

38. Mr. Deccio's testimony concerning the ability to construct a new road appeared to be reasonable, but his estimates on costs and overall impact to the land were unpersuasive, given his acknowledgment that those costs did not include permitting costs, surveying costs, wetland mitigation costs and actual construction costs.

39. Defendants presented the testimony of Terry Hurley, of Earthwork Exchange, LLC, regarding the costs associated with building a new roadway over and across the 1914 Easement and the 30 foot Private Easement. The estimate includes a breakdown for General Conditions, TESC Erosion Control and other efforts. The total estimate was $327,862.00, which the Court finds credible.

40. Construction of a new road in the wetland and wetland buffer areas would require substantial earthwork, including removal of debris, cutting of trees, culvert installation and stream mitigation, and a significant amount of new material to be brought in for elevation of the road from the low lying area in which the Aminpours have proposed construction. Significantly, there is no indication that the LaValle or Krause families (the property owners to the south and over whose properties this new road would travel) have knowledge of or consented to any such new construction.

41. The unnecessary expenditure of hundreds of thousands of dollars, the lack of productive use for the Aminpour's [sic] Driveway parcel (see findings below), the functionality of the existing road, and the undisputed direct impact on the environment associated with construction of an entirely new road, make the construction of a new road unreasonable and unfeasible.

The court also found that the Western Aminpour Parcel was worth only $2,500 and that the Aminpours' evidence regarding the value ($170,000) and stated intended use of the driveway parcel (as a shipping container home) was not credible. These unchallenged findings of fact amply support the court's conclusion that the Englunds met their burden to show reasonable necessity.

The Aminpours, relying primarily on Carlson, further contend that to assess whether developing a new driveway in the Private Easement was cost prohibitive, the trial court was required to compare the cost of building a new road over an existing private easement against the total value of the Englunds' property. They contend that because the court did not specifically find that these construction costs were disproportionate to the value of the Englunds' property, reversal is required as a matter of law. We disagree.

In Carlson, the petitioner purchased a landlocked parcel of property from his father, which he accessed via a "way" across his father's adjacent property. Carlson, 107 Wash. at 229. The petitioner later sought to condemn a private way of necessity

11

across another neighbor's land to construct a new road, arguing that it would be more convenient and practicable than using the pre-existing passage, which "was over high and difficult hills and low boggy ground." Id. The petitioner presented evidence that the existing way was impassable for the greater part of the year, his children were unable to travel to school over it, and merchants refused to deliver goods to his family unless he constructed a road. Id. at 229-30. The neighbor, however, presented evidence that a road could be built across the petitioner's land for a reasonable cost, and that as good a grade could be established over petitioner's land as over the neighbor's land, at an equal cost. Id. at 230. Further, a road over the neighbor's parcel would also have had to be filled or planked to be passable in the winter. Id. Another witness with 18 years' experience in road building concluded that a road over either property "would be about as good as the other, and would cost about as much." Id.

The trial court found that the petitioner had established that a private way over the neighbor's land was the most practical route for a roadway. Id. at 231-32. The neighboring landowner challenged the sufficiency of the evidence to support the finding of necessity. In discussing the meaning of "reasonable necessity," the Carlson court stated:

> It will be noticed that there is a division of authority, some cases holding that the necessary requisite to create a right of way (or, as we may say, to give a right of condemnation) must be absolute and indispensable, and others that no more is required than a showing of reasonable necessity; that it is sufficient if it be shown that no other way can be made without unreasonable labor and expense, and that the reasonableness of the labor and expense is determined by the cost of creating the way as compared with the value of the property. But, however this may be, it is said that mere inconvenience, no matter how great, will not sustain the right to insist upon a way of necessity.

Id. at 235. The Carlson court concluded there was insufficient evidence to support a finding of reasonable necessity because "the only difference we can measure is that of the two routes the [existing way] would be longer, slightly circuitous, and would possibly cost more to improve, while the way over the [neighboring parcel] would be shorter and follow a straight line." Id. at 234. Because the evidence demonstrated only that a new road over the neighbors' land was simply more practical than improving the existing access over the petitioner's land, the court reversed the condemnation. Id. at 238.

We can find no requirement in Carlson for a trial court to compare the cost of building a road in an existing easement with the overall value of the condemnor's property. And we decline to read Carlson for the narrow proposition that the reasonable necessity inquiry requires a comparison of the expense to develop the route and the value of the condemnor's property. To the contrary, the Carlson court specified that "[t]he word 'necessity' cannot be defined in such a way as to meet every case; its meaning must be found in the facts and circumstances disclosed in the instant case." Id. at 235. Therefore, while comparing the cost of building a new access road against the value of the property being accessed is one way of establishing reasonable necessity, neither Carlson nor its progeny hold that the court's determination is fatally flawed absent such a finding. See, e.g., Beeson v. Phillips, 41 Wn. App. 183, 187, 702 P.2d 1244 (1985) ("It is, of course, impossible to state a rule which would in all cases fix the dividing line between reasonable necessity and inconvenience. Every case must to a large extent depend upon its own facts."); State v. Superior Court for Okanogan County, 119 Wash. 372, 374, 205 P. 1046 (1922) ("There being no other practicable or feasible road out other than that proposed, a reasonable necessity existed therefor.");

13

Woodward v. Lopez, 174 Wn. App. 460, 473-74, 300 P.3d 417 (2013) (petitioners demonstrated genuine issues of material fact regarding feasibility and expense of constructing road across wetlands).

Here, the trial court found that building a new driveway across the Private Easement would cost an estimated $327,862. It found that constructing a new road in wetland and wetland buffer areas would require substantial earthwork, and there was no guarantee that the Englunds could even obtain a county permit to build the road in light of the surrounding environmentally sensitive land. The trial court further found that constructing a new driveway would require the consent of two additional landowners, neither of whom were parties to the litigation. Based on these and other unchallenged findings of fact, the court found that a new driveway was "unreasonable and unfeasible." The court followed the law in analyzing these facts and in finding it reasonable to condemn a private way of necessity over an existing driveway that has a value of only $2,500. The trial court did not err in granting a private way of necessity in the driveway to the Englunds.

III. Attorneys' Fees

The Aminpours argue that the trial court preemptively prohibited them from seeking attorneys' fees and costs pursuant to RCW 8.24.030 and contend that remand is required to allow them to do so. We disagree.

"Generally, each party in a civil action must bear its own attorney fees." Williams v. Tilaye, 174 Wn.2d 57, 61, 272 P.3d 235 (2012). However, "[i]n a condemnation action, a trial court has discretion to grant an award for attorney fees in light of the circumstances in each case." Kennedy, 115 Wn. App. at 872 (citing Beckman v. Wilcox,

96 Wn. App. 355, 367, 979 P.2d 890 (1999)). We review a decision to award or deny attorney fees and the reasonableness of any attorney fee award for an abuse of discretion. Gander v. Yeager, 167 Wn. App. 638, 647, 282 P.3d 1100 (2012).

RCW 8.24.030 provides, in relevant part:

> In any action brought under the provisions of this chapter for the condemnation of land for a private way of necessity, reasonable attorneys' fees and expert witness costs may be allowed by the court to reimburse the condemnee.

This statute "permits, but does not require, a trial court to grant a condemnee attorney fees." Noble, 167 Wn.2d at17. "RCW 8.24.030 is unlike other attorney fees statutes, which allow attorney fees only to a prevailing party." Kennedy, 115 Wn. App at 872-73. The court may award fees "without regard to whether the condemnee has prevailed in the action or on any particular issue." Sorenson, 70 Wn. App. at 279.

Here, the Aminpours' trial brief correctly noted that the court "must determine reasonable attorneys' fees and expert witness costs, including to reimburse the condemnee," pursuant to RCW 8.24.030. But they did not elucidate their request or ask the court to reserve ruling on the issue. In response, the Englunds argued that each party should bear their own fees and costs. In its findings of fact and conclusions of law, the trial court ruled as follows:

> RCW 8.24.030 makes any award of fees discretionary to the condemnee. This Court, having considered all the admitted evidence and testimony and being aware of the competing difficulties for each side in this case, has discretion to also not award costs and fees under RCW 8.24.030. In this case, each side has spent considerable time, effort, and personal funds to both prosecute and defend the asserted claims. The Court holds that each Party is responsible for their own attorneys' costs and fees incurred as a result of this litigation.

This ruling clearly shows that the court properly considered the Aminpours' fee request in light of the record and the parties' circumstances. The court did not abuse its discretion in denying the request.

Both parties seek attorneys' fees and costs on appeal. The Aminpours request an award of fees pursuant to RAP 18.1(a), which allows us to award a party reasonable attorney fees and expenses if applicable law grants the right to such recovery. Here, the applicable law is RCW 8.24.030. Given our resolution of the appeal, we deny the Aminpours' request.

The Englunds request an award of fees and costs as sanctions for a frivolous appeal under RAP 18.9. "An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal." Lutz Tile, Inc. v. Krech, 136 Wn. App. 899, 906, 151 P.3d 219 (2007). All doubts as to whether the appeal is frivolous are resolved in favor of the appellant. Wood v. Thurston County, 117 Wn. App. 22, 29, 68 P.3d 1084 (2003). Because the Aminpours' appeal is not frivolous, no sanctions are warranted under RAP 18.9.

Affirmed.

_Chung, J._

WE CONCUR:

_Andrus, C.J._                    _Bowman, J_