# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| SHARON D. ROSE, | No. 47101-9-II |
| Appellant/Cross-Respondent, | |
| v. | |
| JOHN C. ZIMMERMAN, JR., | UNPUBLISHED OPINION |
| Respondent/Cross-Appellant. | |

SUTTON, J. — Sharon Rose,[1] personal representative of the estates of her parents, Robert and Wilma Rose, appeals the trial court's dismissal of her lawsuit against John Zimmerman, Jr. (individually John Jr.) and his wife (together the Zimmermans) and F.N.M. Corporation (FNM) arising from her parents' investment in a joint venture development. Sharon argues that the trial court's findings of fact are not supported by substantial evidence and that they do not support the conclusions of law on her claims of conversion, breach of a fiduciary duty, fraud, misrepresentation, breach of an express trust, and a Consumer Protection Act (CPA) violation. She further argues that (1) her claims are not time barred, (2) her father's disability tolled the applicable statutes of limitations, (3) the discovery rule applies to her claims, (4) she had one year after her father's death to file a claim on behalf of the estate, and (5) the doctrine of res judicata does not apply. The Zimmermans cross appeal the trial court's denial of an award of attorney fees

---

[1] We refer to the parties by their first names to avoid confusion and intend no disrespect.

and costs and also request attorney fees and costs on appeal. We affirm the trial court's dismissal of Sharon's claims because they are all time barred.[2] We also affirm the denial of attorney fees at trial, and decline to award the Zimmermans's attorney fees on appeal.

FACTS

I. ROBERT'S AND WILMA'S INVESTMENTS

In 1999 and 2000, Robert and Wilma invested in a joint venture development in Pierce County. On January 1, 1999, Robert and Wilma, as the trustees of the Rose Family Revocable Living Trust (Rose Family Trust),[3] signed the Rose Joint Venture Agreement (RJVA) with FNM. John Jr. and Wayne A. Semke, president and vice president of FNM, executed the RJVA on behalf of FNM. FNM was also a part of another joint venture, Ashley Meadows Joint Venture (The Lakes).[4] Under the RJVA, Robert and Wilma conveyed their interest in six acres of a twelve-acre parcel (Twelve Acre Parcel), to be held by the Port Tacoma Mobile Estates – Phase III (PTIII), a part of The Lakes. On January 1, 2000, Robert's and Wilma's investment in the joint venture increased and the RJVA was amended.

Robert and Wilma also invested in the First Northern Investment Group (FNIG). At the time of their initial investment in FNIG, neither Robert nor Wilma showed any signs of incapacity or disability. Although Robert and Wilma were investors in FNIG, they never had any managerial or voting control.

---

[2] Because we hold that Sharon's claims are time barred, we do not reach the issue of whether her claims are precluded by res judicata.

[3] Established by the December 30, 1993, Rose Family Revocable Living Trust Agreement.

[4] Ashley Meadows Joint Venture did business under the name "The Lakes." Ex. 16.

## II. SALE OF THE FIVE ACRE PARCEL

On July 24, 2000, PTIII and FNM, as partners of and on behalf of The Lakes, conveyed a separate five-acre parcel (Five Acre Parcel) to John Jr. and his wife, and recorded the conveyance in Pierce County. The Five Acre Parcel was physically adjacent to the Twelve Acre Parcel in which Robert and Wilma had a one-half interest. The Lakes recognized the gain from the sale of the Five Acre Parcel in its 2000 tax return, which it distributed to all joint investors, including Robert and Wilma. This conveyance is the subject of Sharon's claims.

In March 2007, John Jr. allegedly entered into an agreement to sell the Five Acre Parcel back to The Lakes, and The Lakes made payments that totaled $183,397.50 to John Jr. until the agreement was cancelled by John Jr. in March 2008. It was alleged that John Jr. had misappropriated the money he received before he cancelled the agreement.

## III. ROBERT'S AND WILMA'S CAPACITY

In August 2004, Sharon began assisting her parents with estate planning and attended a meeting with them and attorney Megan Farr to have new wills drafted. On August 5, Robert and Wilma revoked the 1993 Rose Family Revocable Living Trust Agreement and terminated the Rose Family Trust. On September 17, all interests of the terminated Rose Family Trust were transferred to Robert and Wilma individually, and the RJVA was amended to allow for this transfer.

Farr testified at trial that as of August 5, 2004, both Robert and Wilma had testamentary and contractual capacity. Robert's cognitive abilities declined over time, beginning no earlier than June 2004. Additionally, it was unclear whether Wilma ever lacked capacity, but she deferred to Robert's decisions regarding their investments.

Sharon also expressed concerns to Farr about her parents' investments in the RJVA and financial transactions with John Jr. Farr referred Robert, Wilma, and Sharon to attorney Stuart Morgan. On behalf of Robert and Wilma, Morgan sent letters to John Jr. in December 2004 and January 2005, requesting information regarding Robert's and Wilma's investments in the RJVA. John Jr.'s January response detailed Robert's investments in the RJVA and noted that "[Robert] is now incapable of making decisions on his own behalf. In my opinion he had crossed that line by June of 2004." Ex. 9. Morgan wrote a second letter to John Jr. explaining that John Jr.'s responsive letter did not address his clients' concerns and that if a better response was not provided, he would recommend legal action.

In October 2005, Farr drafted codicils for Robert and Wilma and she testified that Robert and Wilma both had testamentary and contractual capacity to change their wills. Not later than October 2005, Sharon had power of attorney to manage her parents' financial affairs and she advised John Jr. that she had a general power of attorney to execute business related to her parents' RJVA investments. Wilma passed away in June 2006 and Robert passed away in April 2008.

IV. CONCERNS WITH JOHN JR.'S CONDUCT

In 2009, Sharon was selected to be on the advisory committee for The Lakes investors and was present on January 22, 2010, when the advisory committee discussed their concerns about John Jr. and The Lakes investments. By this date, Sharon believed that John Jr. was acting in his own interests and not in the interests of the RJVA joint investors or her parents, and she no longer trusted him. Sharon later testified that at the January 2010 meeting, the committee discussed a potential lawsuit against John Jr. by an investor, but that nothing was ongoing at that time. On February 4, Sharon voted to remove John Jr. from his management position with FNIG.

4

In March 2010, John C. Zimmerman, Sr. (John Sr.) purchased the Five Acre Parcel from his son, John Jr. and his wife.

In April 2010, FNIG filed a lawsuit against The Lakes, John Jr., and John Sr. seeking quiet title to the Five Acre Parcel and alleging a breach of a fiduciary duty by John Jr. and other causes of action related to John Jr.'s role in The Lakes development. FNIG and The Lakes negotiated a settlement regarding all related claims to the Five Acre Parcel and the superior court entered a stipulation and agreed order of dismissal with prejudice. Sharon did not seek to intervene in the 2010 lawsuit while it was pending.

### V. SHARON'S LAWSUIT

On February 28, 2013, Sharon filed a lawsuit against John Jr. and his wife, John Sr. and his wife, and FNM, seeking quiet title to the same Five Acre Parcel. Sharon asserted claims of conversion, breach of fiduciary duty, fraud, misrepresentation, brief of an express trust, and a CPA violation.[5] The Zimmermans affirmatively pled that all causes of action were time barred, that any disability by Robert ended upon his death, and that res judicata barred Sharon from relitigating the May 2010 lawsuit against John Jr.

### VI. TRIAL

At trial, Sharon moved to exclude any testimony regarding what Robert or Wilma said before their death. The trial court granted the motion.

---

[5] Before trial, Sharon dismissed the quiet title and uniform fraudulent conveyance claims, and dismissed all claims against all other defendants named in the third amended complaint except for John Jr. and his marital community. At trial, she conceded that the statute of limitations barred the breach of contract claim, and the trial court also dismissed that claim.

> THE COURT: [S]pecific hearsay is going to be prohibited, and I think generally we have a Dead Man's Statute problem. [Robert and Wilma] are both dead, and that means [Sharon] also is governed by the same rules, and that will be an issue there as well. I don't think either witness can really get into what they knew, what they said, other than through documents showing what they were—what they received.

1 Verbatim Report of Proceedings (VRP) at 169. The trial court permitted limited testimony as to the "extent of how [John Jr.] knew [Robert] and how they developed their connection" and John Jr.'s "observations." 1 VRP at 180. The trial court excluded testimony that "relate[d] to any discussions [with Robert or Wilma and] any particular transactions that they entered into that [were not] the subject of a document that [the trial court could] review." 1 VRP at 180.

Following a bench trial, the trial court entered the following findings (FF), which Sharon now challenges:

> 3. Robert Rose's disability, if any, expired not later than his death on April 19, 2008. Arguably, it expired when Sharon Rose obtained his Power of Attorney. To the extent Wilma Rose was ever disabled or lacking in capacity, such disability expired not later than her death in June 2006.
>
> . . .
>
> 8. Pursuant to the January 1, 1999 and January 1, 2000 Rose Joint Venture Agreements with FNM Corp (controlled by John Zimmerman, Jr.), the Rose Joint Venture was given a "beneficial" interest in one-half of a twelve acre parcel [] held by the Port of Tacoma III investors, however, the Rose Joint Venture was never given any managerial or voting control over Port of Tacoma III or the Ashley Meadows Joint Venture, in which Port of Tacoma III was a participant.
>
> . . .
>
> 10. The twelve-acre parcel which was the subject of the 1999 and 2000 Rose Joint Venture Agreements was a distinct and separate legal (though physically adjacent) parcel from the Five-Acre Parcel which was conveyed by PTIII to John Zimmerman, Jr. in July 2000.
>
> 11. Sharon Rose was selected as one of five members of an advisory group with respect to the Ashley Meadows Joint Venture investors in 2009 and voted to oust John Zimmerman, Jr. as manager of that group on February 4, 2010. She was present at a meeting of certain Ashley Meadows Joint Venture investors on January

22, 2010 at which time concerns about John Zimmerman Jr. and the viability of the investments in Ashley Meadows were raised.

12. Sharon Rose was aware of or should have been aware of a lawsuit filed under Pierce County Cause No. 10-2-07610-2 by FNIG against John Zimmerman Jr. in March 2010 prior to or at the time it was filed. She was certainly aware of the suit prior to settlement and dismissal with prejudice of that suit in [July][6] 2011.

Clerk's Papers (CP) at 130-131.

The trial court also entered the following conclusions of law (CL), which Sharon

challenges:

1. The three year statute of limitations for conversion under RCW 4.16.080(2) as it relates to the transfer of the five-acre parcel accrued at the time of that conveyance on July 26, 2000. Therefore, as to that conveyance, the statutes expired on July 26, 2003. There is insufficient evidence of disability on the part of [Robert and Wilma] as of that date to justify tolling of the statute.

2. The three year statute of limitations on breach of fiduciary duty similarly expired on July 26, 2003 as it relates to the 2000 conveyance. To the extent any discovery provision applies, I find that the fact of the transfer was discoverable at upon receipt of the 2000 Rose Joint Venture tax return following said transfer. Moreover, it was discoverable not later than January 2005 at the time [Robert and Wilma] (and Sharon Rose) met with Mr. Morgan upon a title search. Even if tolled from that point, the tolling expired not later than one year after [Robert's] death, or April 18, 2009.

3. To the extent Plaintiff asserts any separate breach of fiduciary duty claim with regard to misappropriation of funds between 2006 and 2008, the statute of limitations expired not later than March 1, 2011, the date of the last payment.

4. The three-year statute of limitations as to fraud and misrepresentation begins to run at the time the facts constituting the fraud are discovered or should have been discovered. RCW 4.16.080(4). At the latest, these facts were discoverable at the time Mr. Morgan engaged in his correspondence with Mr. Zimmerman in January 2005. Even if tolled as to Robert and Wilma at that time, the statute expired in 2009, one year after Robert's death or April 18, 2009 per RCW 4.16.200.

5. Claims arising under the Consumer Protection Act must be commenced within four years of the act giving rise to the complaint. RCW 19.86.120. It is not

---

[6] This finding of fact states that the trial court dismissed the suit in May 2011, however the stipulation and order of dismissal was filed July 26, 2011.

apparent how the Consumer Protection Act even applies in this case given that the Rose Joint Venture was not a party to the 2000 conveyance or any subsequent transaction involving that property. That said, I conclude that any cause of action for the 2000 conveyance expired in July 2004. Even if tolled by disability, it expired not later than one year after Robert's death. To the extent the claims relates to alleged misappropriation of funds by John Jr. in 2007-2008 (the $183,397.50 received from the failed sale of the property back to Ashley Meadows), the statute expired not later than March 1, 2012.

6. It is unclear whether the Express Trust claim is still in the case as it is a form of breach of contract, but if it is, I conclude that the statute of limitations expired [six] years after the July 26, 2000 conveyance.

7. With regard to res judicata, I conclude that that the elements of res judicata are met with regard to the cause of action for breach of fiduciary duty (breach of contract, quiet title and fraudulent conveyance were already dismissed). This claim involves the same subject matter, was a cause of action in the 2010 action involving the same parties and Sharon Rose was in privity with FNIG and therefore represented in that litigation.

CP at 131-132.

Sharon appeals.[7] The Zimmermans cross appeal the trial court's denial of an award of attorney fees and also request an award of attorney fees on appeal.

ANALYSIS

I. STANDARD OF REVIEW

We review findings of fact to determine whether substantial evidence supports the findings and whether those findings of fact support the conclusions of law. *Scott's Excavating Vancouver, LLC v. Winlock Prop., LLC*, 176 Wn. App. 335, 341, 308 P.3d 791 (2013). Substantial evidence is "'defined as a quantum of evidence sufficient to persuade a rational[,] fair-minded person the premise is true.'" *Winlock Prop.*, 176 Wn. App. at 341-42 (alteration in original, internal quotation marks omitted) (quoting *Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 92006)). We

---

[7] Sharon does not challenge findings of fact 1-2, 4-7, 9, or 13 and they are verities on appeal. She only challenges findings of fact 3, 8, 10-12 and conclusions of law 1-7.

review the evidence in the light most favorable to the prevailing party and defer to the trier of fact on witness credibility or conflicting testimony. *Winlock Prop.*, 176 Wn. App. at 342. If the standard is satisfied, we will not substitute our judgment for that of the trial court even though we may have resolved a factual dispute differently. *Sunnyside Valley Irr. Dist. v. Dickie*, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003). Unchallenged findings are verities on appeal. *Casterline v. Roberts*, 168 Wn. App. 376, 381, 284 P.3d 743 (2012).

We review a trial court's conclusions of law de novo. *Winlock Prop.*, 176 Wn. App. at 342. We review a conclusion of law erroneously labeled a finding of fact as a conclusion of law and review a finding of fact erroneously labeled as a conclusion of law as a finding of fact. *Winlock Prop.*, 176 Wn. App. at 342.

## II. LEGAL ISSUES

### A. STATUTE OF LIMITATIONS

A three-year statute of limitations applies to Sharon's claims for conversion, breach of fiduciary duty, fraud, and misrepresentation. RCW 4.16.080. Sharon provides no argument to extend the statute of limitations on the breach of express trust claim beyond three years.[8] A four-year statute of limitations applies to her CPA claim. RCW 19.86.120.

---

[8] Sharon argues that RCW 11.96A.070(1)(a) controls and provides a statute of limitation of three years for claims of breach of express trust. Although RCW 4.16.040 provides that an action upon a contract in writing, or liability express or implied arising out of a written agreement, shall be commenced within six years, Sharon does not argue that this statute applies to her claim of breach of express trust. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration. *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). Thus, we do not reach the issue of whether RCW 4.16.040 applies to Sharon's claim of breach of express trust.

B.  DISCOVERY RULE

Sharon argues that the discovery rule applies to toll the statutes of limitations on all claims until August 10, 2010 because she did not discover that the Five Acre Parcel was conveyed to John Jr. until that date.  We disagree.

The statute of limitations "begins to run when the party discovered, or with the exercise of due diligence could have discovered, the existence of a fraudulent conveyance." *Aberdeen Fed. Sav. & Loan Ass'n v. Hanson*, 58 Wn. App. 773, 776, 794 P.2d 1322 (1990). The discovery rule tolls the statute of limitation period when the defendant fraudulently conceals a material fact from the plaintiff and thereby deprives the plaintiff of the knowledge of accrual of the cause of action, until such time as the plaintiff knew or, through the exercise of due diligence, should have known of the fraud.  *Crisman v. Crisman*, 85 Wn. App. 15, 20, 931 P.2d 163 (1997).  "'When a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm.'" *August v. U.S. Bancorp*, 146 Wn. App. 328, 342, 190 P.3d 86, (2008) (internal quotation marks omitted) (quoting *Green v. Am. Pharm. Co.*, 136 Wn.2d 87, 96, 966 P.2d 912 (1998)).

The Zimmermans argue that Robert and Wilma were on notice of the July 2000 sale to John Jr. at the time it was recorded in 2000.  While the sale was properly recorded, we disagree that Robert and Wilma were on notice of the sale simply because it was recorded, because they had no reason to check the public record or otherwise know of the conveyance.  Recording does not constitute constructive notice of a sale if there is no reason for the plaintiff to have checked for recordings. *Aberdeen Fed. Sav.*, 58 Wn. App. at 777-78.

However, we hold that substantial evidence supports the trial court's finding, that the July 2000 conveyance was discoverable upon receipt of the 2000 tax return[9] for The Lakes development and not later than January 2005 when Morgan initiated his communication with John Jr. regarding Robert's and Wilma's investments. Sharon also conceded that she did not question the ownership of the Five Acre Parcel when she saw a map dated August 2003 that noted the Zimmermans as the owners of the Five Acre Parcel. Thus, we hold that Robert and Wilma should have discovered the July 2000 conveyance through the exercise of due diligence no later than January 2005.

C. TOLLING DUE TO INCAPACITY

Sharon further argues that the applicable statutes of limitations were tolled because Robert was "disabled" as defined under RCW 11.88.010(1)(b).[10] She also cites to a concession by John Jr. that "it is extremely difficult for either [Robert or Wilma] to decipher exactly what is occurring

---

[9] The trial court's second conclusion of law incorrectly states that the July 2000 conveyance was discoverable upon receipt of the "2000 *Rose Joint Venture*" tax return, which Sharon correctly argues was not admitted into evidence. Br. of Appellant at 3 (emphasis added); CP 131. This finding is erroneously labeled a conclusion of law (CL 2) and we treat it as a finding of fact. However the record reflects that the "Ashley Meadows Joint Venture" (The Lakes) 2000 tax return was properly admitted, without objection, as Exhibit 23. Ex. 23; 1 VRP at 159-160. The 2000 tax return reflects the 2000 conveyance of the Five Acre Parcel and John Jr. testified that it was sent to all of The Lakes partners, including Robert and Wilma, as partners of PTIII. Thus, to the extent that the trial court's second conclusion of law is incorrect in relying on the 2000 tax return for the "Rose Joint Venture," the conclusion is supported by substantial evidence because The Lakes 2000 tax return reflected the 2000 sale of the Five Acre Parcel.

[10] RCW 11.88.010(1)(b) provides in relevant part: "a person may be deemed incapacitated as to the person's estate when the superior court determines the individual is at significant risk of financial harm based upon a demonstrated inability to adequately manage property or financial affairs."

11

with their investments in the various companies."[11]  Ex. 8.  However, she offers no additional

evidence to support her claim that Robert was incapacitated, and Farr testified that Robert and

Wilma were not "in need of full guardianship," and they had testamentary and contractual capacity

in August 2004 and October 2005.  2 VRP at 349.

While Robert and Wilma should have discovered the July 2000 conveyance no later than

January 2005, assuming that Robert's disability, if any, tolled the statute during that time, we hold

that substantial evidence supports the trial court's finding (FF 3) that Robert's disability, if any,

expired upon his death in April 2008.  We also agree with the trial court and hold that there is no

evidence that Wilma was disabled at any time to toll the statutes of limitations (FF 3).

D.  SURVIVAL STATUTE

Sharon argues that RCW 4.20.046[12] preserves claims brought by the estate for one year

after Robert's death.  However, the survival statute only preserves causes of action that the

decedent could have brought had he survived and the statute of limitations had not yet accrued at

the time of death.  *Vernon v. Aacres Allvest, LLC*, 183 Wn. App. 422, 430, 333 P.3d 534 (2014),

*review denied*, 182 Wn.2d 1006 (2015); *see also White v. Johns-Manville Corp.*, 103 Wn.2d 344,

---

[11] Sharon also cites *In re Bayer's Estate*, 101 Wn. 694, 172 P. 842 (1918) and *Guardianship of Heuschele v. Phelps*, 34 Wn.2d 414, 416, 208 P.2d 1167 (1949) to support her argument that a superior court may appoint a guardian based on a demonstrated inability to manage property or financial affairs.  However, these cases are not relevant because there was no petition to a superior court to appoint a guardian and Farr testified that Robert and Wilma did not need full guardianship.

[12] RCW 4.20.046 provides that "[a]ll causes of action by a person or persons against another person or persons shall survive to the personal representatives of the former and against the personal representatives of the latter, whether such actions arise on contract or otherwise, and whether or not such actions would have survived at the common law or prior to the date of enactment of this section."

358, 693 P.2d 687 (1985) ("[The survival statute] does not create a separate claim for the decedent's survivors; rather, it merely preserves the causes of action that a person could have maintained had he not died."). Thus, the survival statute does not preserve any claims for an additional year after Robert's death nor does it add an additional year to the applicable statutes of limitations. Because we hold that there is sufficient evidence that Robert's disability, if any, expired upon his death in April 2008, the statutes of limitations began to accrue upon his death.

E. DEADMAN'S STATUTE

Sharon argues that John Jr.'s testimony about the RJVA investments violated the deadman's statute, RCW 5.60.030,[13] and the trial court erred in relying upon his testimony to find that the RJVA created a beneficial interest to Robert and Wilma in only six acres of the Twelve Acre Parcel as separate and distinct from the Five Acre Parcel.

The deadman's statute "prevent[s] interested parties from giving self-serving testimony regarding conversations and transactions with the deceased because the dead cannot respond to unfavorable testimony." *Parks v. Fink*, 173 Wn. App. 366, 375, 293 P.3d 1275 (2013). The deadman's statute applies only to statements by or transactions with the deceased; it does not apply to information contained in documents written or executed by the deceased person. *Erickson v.*

---

[13] RCW 5.60.030 provides that

> [n]o person offered as a witness shall be excluded from giving evidence by reason of his or her interest in the event of the action, . . . PROVIDED, HOWEVER, [t]hat in an action . . . where the adverse party sues or defends as executor, administrator or legal representative of any deceased person, . . . then a party in interest or to the record, shall not be admitted to testify in his or her own behalf as to any transaction had by him or her with, or any statement made to him or her, or in his or her presence, by [the] deceased.

*Robert F. Kerr, M.D., P.S.*, 125 Wn.2d 183, 187-88, 883 P.2d 313 (1994). Additionally, "the deadman's statute does not prevent an interested party from testifying regarding his or her own feelings or impressions." *Estate of Lennon v. Lennon*, 108 Wn. App. 167, 175, 29 P.3d 1258 (2001).

When Sharon objected to John Jr.'s testimony about the RJVA investments under the deadman's statute, the trial court properly sustained the objection and limited his testimony to include only extrinsic documents regarding transactions. John Jr.'s testimony was properly limited to his own observations and was not barred by the deadman's statute. Additionally, while Sharon correctly notes that the 2000 tax return of RJVA was not introduced into evidence, the 2000 tax return of The Lakes was properly admitted along with other documents related to Robert's and Wilma's investments.[14]

## II. SHARON'S CLAIMS

### A. CONVERSION, BREACH OF FIDUCIARY DUTY, AND FRAUD AND MISREPRESENTATION[15]

Sharon argues that she is entitled to the Five Acre Parcel because it was a part of her parents' RJVA investment, that it was fraudulently conveyed by the PTIII to John Jr. in July 2000,

---

[14] Sharon does not assign error to the admitted documents.

[15] Sharon asserted claims for misappropriation based on the $183,397.50 John Jr. received through the failed sale of the Five Acre Parcel back to The Lakes. The trial court concluded that the claim accrued when John Jr. received the last payment on March 1, 2008. Sharon assigns error to the trial court's conclusion that her claim of misappropriation is barred by the statute of limitations, but she provides no further argument. Without argument or authority to support it, an assignment of error is waived. RAP 10.3(a)(6); *Brownfield*, 178 Wn. App. at 875-76. Thus, we do not address this issue.

14

that the conveyance constitutes conversion, and that John Jr.'s concealment of the conveyance constituted fraud and breach of express trust because he was a fiduciary of the RJVA. We disagree.

A three-year statute of limitations applies to the claims for conversion, breach of fiduciary duty, fraud, and misrepresentation. RCW 4.16.080(2).[16] As analyzed above, substantial evidence supports the findings of fact, which in turn support the trial court's conclusions of law (CL 1-4) that the elements to support the claims of conversion, breach of fiduciary duty, fraud, and misrepresentation were discoverable by Sharon in January 2005 when she and her parents consulted attorney Stuart Morgan and attorney Morgan sent letters to John Jr. requesting information and an accounting of Robert and Wilma's investments in the RJVA.

Applying the discovery rule as analyzed above, and assuming that Robert's disability, if any, tolled the statute until his death in April 2008, we hold that the statute of limitations for each of these claims began to accrue no later than April 2008. We hold that the claims of conversion,

---

[16] RCW 4.16.080(2) states that an action for taking, detaining, or injuring personal property, including an action for the specific recovery thereof, or for any other injury to the person or rights of another shall be commenced within three years, unless otherwise enumerated within the section.

breach of fiduciary duty, fraud, and misrepresentation were time barred no later than April 2011, three years after Robert's death in April 2008.[17]

B.  BREACH OF AN EXPRESS TRUST

Sharon argues that the discovery rule also applies to the claim of breach of an express trust and that RCW 11.96A.070(1)(a) controls.[18]

---

[17] Sharon also argues that the trial court erred in finding (FF 10) that Robert and Wilma had a beneficial interest in one-half of the Twelve Acre Parcel and that the Twelve Acre Parcel was distinct from the Five Acre Parcel because the legal description of the Twelve Acre Parcel in the RJVA is incomplete because it does not contain the section, township, range, or quarter.  The Twelve Acre Parcel, number 0420203002, is distinct from the Five Acre Parcel, number 0420203055, recorded with the county assessor.  Exs. 30, 31.  The RJVA does not contain any language that supports her argument that Robert and Wilma had any interest in the Five Acre Parcel.  Thus, substantial evidence supports the trial court's finding that the Twelve Acre Parcel, which was the subject of the 1999 and 2000 RJVA agreements, was distinct and separate from the Five Acre parcel.

[18] RCW 11.96A.070(1)(a) provides that "a beneficiary of an express trust may not commence a proceeding against a trustee for breach of trust more than three years after the date a report was delivered in the manner provided in RCW 11.96A.110 to the beneficiary or to a representative of the beneficiary if the report adequately disclosed the existence of a potential claim for breach of trust and informed the beneficiary of the time allowed for commencing a proceeding."

No. 47101-9-II

Although it is unclear whether the claim for breach of express trust remains in the case, assuming it was separately plead and remains in the case,[19] Sharon provides no argument or authority that RCW 11.96A.070 applies. RAP 10.3(a)(6); *see Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012) (passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration). RCW 11.96A.070(d) specifically excludes investment trusts or trusts for the sole purpose of paying dividends, interest, interest coupons, or profits, unless any such trust that is created in writing specifically incorporates this chapter in whole or in part. The RJVA does not incorporate RCW 11.96A.070.

Additionally, even if RCW 11.96A.070(1)(a) applies, the three-year statute of limitations begins to run when "'the alleged breach was discovered or reasonably should have been

---

[19] The trial court was uncertain if this claim had been dismissed prior to trial. *See* CL 6. Sharon plead two different causes of action both relying on the same facts:

Constructive Trust and Breach of Express Trust

Defendant John C. Zimmerman Jr and F.N.M. Corp held title to the 5 Acre Parcel in the express trust set forth in the attachment to the Rose Joint Venture Agreement, and each of the conveyances set forth in paragraphs 19 and 20 hereof and the personal appropriation of $183,397.50 on March 1, 2008 by Zimmerman Jr. pursuant to the unrecorded Purchase and Sale Agreement were breaches of such express trust.

CP at 12-13.

Breach of Contract

Each of the conveyances of the 5 Acre Parcel set forth in paragraphs 12 and 13, and the March 1, 2008 cancellation of the unrecorded purchase and sale agreement and the personal appropriation of $183,397.50 by Zimmerman Jr described in paragraph 19(B)(iii) hereof, without notice and without the unanimous vote of the Joint Venturers of the Rose Joint Venture were breaches by Zimmerman Jr and F.N.M. Corp. of the Rose Joint Venture Agreement.

17

discovered.'" *August*, 146 Wn. App. at 342, (quoting *Green,* 136 Wn.2d at 95). As analyzed above, we hold that the conveyance of the Five Acre Parcel was known or should have been known no later than January 2005, and that assuming Robert's disability tolled the statute of limitations further, his disability expired and the statute began to accrue no later than April 2008. Thus, the breach of an express trust claim is time barred as of April 2011, three years after Robert's death in April 2008.

## C. CONSUMER PROTECTION ACT VIOLATION

Sharon argues that the merits of the CPA claim were not before the trial court, the trial court's conclusion of law 5 is not appropriate or supported by substantial evidence, and the trial court erred when it failed to apply the discovery rule to this claim.

A four-year statute of limitations applies to a CPA claim.[20] While it is unclear whether Sharon could sustain a CPA claim or whether that claim was properly before the trial court, we exercise our discretion under RAP 2.3(e)[21] to address whether the statute of limitations has accrued on this claim.

As analyzed above, substantial evidence supports the finding of fact that the elements of this claim should have been discoverable by Sharon no later than January 2005 when she and her parents consulted with attorney Stuart Morgan. Assuming but not deciding that the CPA claim was properly before the trial court, that the discovery rule applied under RCW 19.86.120, and that

---

[20] "Any action to enforce a claim for damages under [the Washington Consumer Protection Act] shall be forever barred unless commenced within four years after the cause of action accrues." RCW 19.86.120.

[21] Upon accepting discretionary review, the appellate court may specify the issue or issues as to which review is granted. RAP 2.3(e).

Robert's disability tolled the statute of limitations further, his disability expired and the statute began to accrue as of April 2008. Thus, the findings of fact support the conclusion of law (CL 5) that the CPA claim was time barred as of April 2012, four years after Robert's death in April 2008.

Thus, Sharon's claims of conversion, breach of fiduciary duty, fraud, misrepresentation, breach of express trust, and CPA violations were all time barred prior to her initial complaint, filed in February 2013.

## ATTORNEY FEES

A trial court may award attorney fees if the request is based on a statute or a contract. *Gander v. Yeager*, 167 Wn. App. 638, 645, 282 P.3d 1100 (2012). We review the reasonableness of an award for attorney fees for an abuse of discretion. *Gander*, 167 Wn. App. at 645.

In their cross appeal, the Zimmermans argue that the trial court erred in denying them an award of attorney fees under the contract because all of Sharon's claims stem directly from the RJVA and the 2011 settlement agreement, both of which contain prevailing party fee provisions. The Zimmermans also argue that even though Sharon waived her right to arbitration to pursue this current lawsuit, they are entitled to an award of attorney fees. They also request an award of attorney fees on appeal under RAP 14.1[22] and RAP 18.1.[23]

---

[22] RAP 14.1 provides that the "appellate court determines costs in all cases after the filing of a decision terminating review, except as provided in rule 18.2 relating to voluntary withdrawal of review."

[23] RAP 18.1 provides that "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court, the party must request the fees or expenses as provided in this rule, unless a statute specifies that the request is to be directed to the trial court."

The RJVA provides that "the arbitration shall determine the 'prevailing party' and such party shall be entitled to its reasonable attorneys' fees and costs which shall be a part of the award." Ex. 13. The May 2011 settlement agreement also provides that "[i]n the event of any action between the parties hereto . . . the prevailing party shall be entitled to recover all costs incurred in connection with such lawsuit or legal proceedings, including, without limitation, reasonable attorneys' fees and costs." Ex. 33.

The trial court found that arbitration was waived and that the Zimmermans' request for attorney fees was not related to enforcing the RJVA, but instead related to the claims of conversion, breach of fiduciary duty, fraud, and misrepresentation against John Jr. VRP (Feb. 27, 2015) at 5-10. The trial court also found that the provisions for attorney fees contained in the settlement agreement did not apply because Sharon was not a signatory to the settlement agreement and that the language of settlement agreement provides fees "[i]n the event of any action between the parties hereto to enforce any terms of this agreement or other agreement relating to, arising out of or pertaining to this agreement." VRP (Feb. 27, 2015) at 7.[24]

The Zimmermans do not provide any argument that the trial court abused its discretion in ruling that the fee award provisions related to enforcing the RJVA and not to the other alleged actions. Thus, we affirm the trial court's order denying the Zimmermans an award of attorney fees and costs at trial, and we decline to award the Zimmermans attorney fees on appeal.

---

[24] The trial court also found that the Zimmermans' requested an award of attorney fees related to CR 11 sanctions, which the trial court denied. The Zimmermans did not appeal the court's order denying CR 11 sanctions.

No. 47101-9-II

CONCLUSION

We hold that substantial evidence supports the trial court's findings of fact and they support the trial court's conclusions of law. Robert and Wilma should have discovered the elements of their causes of action no later than January 2005, and although Robert may have been disabled at certain times, any disability expired upon his death on April 19, 2008. The trial court properly limited John Jr.'s testimony to his personal observations and admitted only related documents without objection.

We affirm the trial court's order dismissing all of Sharon's claims, affirm the trial court's order denying the Zimmermans an award of attorney fees and costs at trial, and decline to award the Zimmermans their attorney fees and costs on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

BJORGEN, C.J.

MAXA, J.

21